## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **MICHAEL EDWARD MCCASLAND,** § | |
| Petitioner, § | |
| § | |
| v. § | Civil Action No. 4:09-CV-473-A |
| § | |
| **RICK THALER, Director,** § | |
| **Texas Department of Criminal Justice,** § | |
| **Correctional Institutions Division,** § | |
| Respondent. § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND NOTICE AND ORDER

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

#### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

#### B. PARTIES

Petitioner Michael Edward McCasland, TDCJ-ID #1337457, is in custody of the Texas Department of Criminal Justice, Correctional Institutions Division. He is represented by Danny Burns, Attorney at Law.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

### C. FACTUAL AND PROCEDURAL HISTORY

In 2005 McCasland was convicted by a jury of four counts of sexual assault of a child, four counts of indecency with a child, and four counts of possession of child pornography in Johnson County, Texas. He is serving four 20-year sentences and four 15-year sentences, to be served consecutively totaling 140 years, and four 10-year sentences, to be served concurrently with his 20-year sentence in count one. (State Habeas R. at 13) The appellate court summarized the evidence at trial as follows:

> McCasland moved in with his cousin, Ken, in 2002 or 2003 and lived with him and his family for four to six months. During that time, he became acquainted with Ken's fourteen-year-old daughter, [R.F.]. McCasland then moved in with Ken's mother in a two-bedroom home in Burleson, Texas. [R.F.] frequently visited her grandmother on the weekend. She and McCasland continued their friendly relationship for approximately one month before he began kissing and touching her inappropriately. During the summer of 2003, McCasland's advances towards [R.F.] escalated from digital penetration to sexual intercourse.
> In June of 2003, [R.F.] also witnessed McCasland engage in sexual conduct with her fifteen-year-old friend, Karen, who spent a weekend with [R.F.] at McCasland's home. On two separate occasions during that visit, McCasland digitally penetrated Karen and performed oral sex on her.
> On April 12, 2004, while using McCasland's computer, [R.F.] discovered child pornography on websites he had visited. She told her mother about the child pornography and about her sexual relationship with McCasland. [R.F.]'s father contacted the Burleson Police Department, and [R.F.] met with Tammy King, a child abuse forensic interviewer with the Johnson County Child Advocacy Center, the following day.
> Based on information obtained from his investigation and from King's interview of [R.F.], Chris Havens, a sergeant detective with the Burleson Police Department, prepared an affidavit to secure a search warrant of McCasland's home. A magistrate reviewed the affidavit and issued the warrant. Havens and other law enforcement officers executed the warrant and seized McCasland's computer, video tapes, and other related items which they suspected contained child pornography.

McCasland's convictions were affirmed on appeal and his petition for discretionary review was refused. *McCasland v. Texas*, No. 10-05-00432-CR, slip copy, at 2-3 (Tex. App.–Waco Feb. 28, 2007); *McCasland v. Texas*, PDR No. 9475-07. McCasland also sought state postconviction

habeas relief to no avail. *Ex parte McCasland*, Application No. WR-71,058-01, at cover. McCasland timely filed this federal petition.

### D. ISSUES

In two grounds for relief, McCasland claims he received ineffective assistance of trial and appellate counsel. (Petition at 7)

### E. RULE 5 STATEMENT

Thaler believes that McCasland has sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b).

### F. DISCUSSION

*Legal Standard for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case.

*Williams*, 529 U.S. at 407-08.

The Act further requires that federal courts give great deference to a state court's factual findings. *See Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). When the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order, typically it is an adjudication on the merits, which is entitled to this presumption. *See Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

*1. Ineffective Assistance of Counsel*

McCasland claims that he received ineffective assistance of trial counsel because counsel failed to interview or call witnesses requested by him and necessary for his defense. He claims he received ineffective assistance of appellate counsel because counsel failed to raise a claim under article 38.05 of the Texas Code of Criminal Procedure. (Petition at 7)

A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). An ineffective assistance claim is governed by the standards set forth in *Strickland v. Washington*. *Strickland*, 466 U.S. at 668. To establish ineffective assistance of counsel a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688. A court must indulge a strong presumption that counsel's conduct fell within

4

the wide range of reasonable professional assistance or sound trial strategy. *Id*. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Where the state courts have applied the *Strickland* attorney-performance standard to factual findings, a federal court will defer to the state courts' determination unless it appears the decision was: (1) contrary to or involved an unreasonable application of *Strickland*, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceedings. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002); *Haynes v. Cain*, 298 F.3d 375, 379-82 (5th Cir. 2002).

The state habeas judge, who also presided over McCasland's trial, conducted a hearing by affidavit. In support of his first claim, McCasland offered the affidavits of Patricia Oliver, McCasland's mother, Tracy Alderson, McCasland's girlfriend, and her daughters Ariel and D'Arcy, Daniel Hernandez, a friend and co-worker, and his daughters Kayla and Sierra Anderson, Dempsey Pullen, a co-worker, Shara Holland, a friend, and Jerry Heaslet, McCasland's employer, wherein one or more affiants testified to McCasland's character and trustworthiness as a person and employee, R.F.'s stranger behavior and her jealousy and possessiveness of McCasland, and the fact that McCasland bought his computer from R.F.'s dad and did not have a password on it. (State Habeas R. at 94-133) Counsel responded by affidavit as follows:

> I spoke many times with Mr. McCasland and his mother Patricia Oliver and was fully aware of all of the factual allegations made by each of the witnesses who were named as necessary in the current application for writ of habeas corpus. In addition, I interviewed Jerry Heaslet in regard to this matter. I was not made aware of the existence of Dempsey Pullen or Shara Holland by Mr. McCasland or Ms. Oliver.
> It was a strategic decision to not include these witnesses in the trial. This decision was made after extensive discussion with and the full agreement of Mr. McCasland.
> Regarding Jerry Heaslet and Daniel Hernandez who worked with Mr.

5

>McCasland, it would have been very detrimental to our case to call them to testify at trial. It was alleged that Mr. McCasland assaulted one of the victims while she was with him at work on at least one occasion. Offering testimony by these witnesses would have shown significant opportunity for Mr. McCasland to have committed these acts. It was a regular occurrence for the victim to accompany Mr. McCasland while he drove his truck. This would have offered independent testimony corroborating her version of the facts.
>
>The testimony of Tracy Alderson, Ariel Alderson, and D'Arcy Alderson would also have been beneficial to the State of Texas. It would have reinforced that Mr. McCasland had an ongoing relationship with [R.F.] Any allegations of sexual acting out by [R.F.] was consistent with the type of behavior of a child going through ongoing sexual abuse.
>
>By calling witnesses now complained of, it is alleged that we could have shown her to be acting as a jealous girlfriend might act. My belief was that calling the witness[es] would have shown that Mr. McCasland basically treated [R.F.] as one might treat a girlfriend. This would have explained her apparent jealous nature and given credibility to her testimony.
>
>Regarding the child pornography allegations, none of the witnesses would have been beneficial in defense of these counts. In addition to the computer, images of child pornography were found on several disks in Mr. McCasland's living area which was under his exclusive custody and control. One was found in his closet and one under his bed. None of the witnesses would have had testimony that could have exculpated Mr. McCasland. Additionally, they could have been confronted and cross-examined with the existence and nature of these images.
>
>I conducted a thorough investigation of the facts of this case and provided Mr. McCasland with effective assistance of counsel. (State Habeas Supp. R. at 9-11)

Based largely on counsel's affidavit, the state habeas court found that it was sound trial strategy not to call the aforementioned witnesses, in an effort to avoid "the very real possibility of further corroboration of R.F.'s testimony," and, applying the *Strickland* standard, concluded counsel was not ineffective for failing to call the witnesses. (State Habeas Supp. R. at 4-12) In turn, the Texas Court of Criminal Appeals rejected the claim on the trial court's findings. McCasland has failed to establish that the state courts' adjudication of the claim was an unreasonable application of *Strickland*. Strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for habeas corpus relief on the grounds of ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009); *Strickland*, 460 U.S. at 689.

McCasland claims appellate counsel was ineffective by failing to raise an issue under article 38.05 of the Texas Code of Criminal Procedure, which provides:

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any state of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

TEX. CODE CRIM. PROC. ANN. art. 38.05 (Vernon 1979).

McCasland complains of testimony by the police detective essentially informing the jury that the presiding judge also signed the arrest and/or search warrants. McCasland objected to admission of the testimony under article 38.05, but the trial court overruled the objection. McCasland argues the trial court's ruling was an implied judicial comment on the weight of the evidence and reflected the judge's lack of impartiality, in violation of article 38.05 and his right to constitutional due process. In response to the claim, counsel testified:

> Upon reviewing the court reporter's transcript, I noticed several issues which were preserved on appeal, including but not limited to the 38.05 issue.
> I reviewed the law applicable to this issue (of which there is no case law in favor of this point) and determined that Judge Neill was only ruling on the admissibility of the evidence and not commenting on the weight of the evidence; therefore this point had no merit on appeal.
> I chose not to raise what I viewed to be a frivolous point and focus on the two valid points which I briefed for the Court of Appeals. (State Habeas R. at 167)

Although no express findings were entered addressing this claim on state habeas review, by denying McCasland's state habeas application without written order, the Texas Court of Criminal Appeals presumeably determined that the trial judge did not infringe upon article 38.05 and, thus, appellate counsel's performance on appeal was not deficient. Deferring to the state court's interpretation of its own law, appellate counsel was not ineffective by failing to raise an issue under article 38.05. Furthermore, as a matter of due process, appellate counsel is not required to raise

7

every conceivable argument urged by his client on appeal, regardless of merit. *Smith v. Robbins*, 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his or her judgment as to their merits and the tactical approach taken. *Jones v. Barnes*, 463 U.S. 745, 749 (1983). McCasland cannot demonstrate that he would have likely prevailed on appeal if counsel had raised the issue; thus, appellate counsel's performance was not objectively unreasonable for failing to raise the issue on appeal.

McCasland presents no compelling argument or evidence to rebut the state courts' adjudication of his ineffective assistance claims, and there is nothing in the record to suggest that but for counsel's alleged acts or omission, the jury would have acquitted McCasland or that he would have prevailed on appeal. McCasland has not met his burden of overcoming the strong presumption that his trial and appellate attorneys were competent. Even if he could show deficient performance, he has not demonstrated that but for counsel's acts or omissions the outcome of his trial or appeal would have been different.

## II.  RECOMMENDATION

McCasland's petition for writ of habeas corpus should be denied.

## III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and

recommendation until January 27, 2010. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV.  ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until January 27, 2010, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED January 6, 2010.

    /s/   Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE